UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES MELVIN CRAMER,

      Plaintiff,

v.                                           Case No. 3:13-cv-262-J-39JRK

DOCTOR CHRISTOPHER BEISER, et al.,

      Defendants.
_____

**ORDER**

      Before this Court is Plaintiff's Motion for Appointment of Medical Experts (Doc. 102; Motion) pursuant to Federal Rules of Evidence 706. Plaintiff, an inmate of the Florida Department of Corrections, who is represented by counsel, is proceeding on an Amended Civil Rights Complaint (Doc. 14; Amended Complaint) pursuant to 42 U.S.C. § 1983. The remaining defendants[1] are Dr. Christopher Beiser, Dr. Page Armand Smith, and Dr. Jorge Caraballo, who Plaintiff sues in their individual capacities. Plaintiff claims the Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment in the administration of an antibiotic, Gentamicin, prescribed to treat an infection. Amended Complaint at 6, 11-12.

      Plaintiff alleges that between January 3, 2010, and February 25, 2010, Defendants failed to test Plaintiff for toxicity resulting from the administration of Gentamicin. Id. at 11-12, 14, 15-16. Plaintiff alleges that Gentamicin is highly toxic, and with Plaintiff's pre-existing kidney problems, he was more susceptible to toxic poisoning. Id. at 15-16. Plaintiff asserts that outward signs of toxicity poisoning were evident from January 20,

---

[1] This Court previously dismissed Plaintiff's action against Defendant Michael Crews, sued in his capacity as Secretary of the Florida Department of Corrections. See Order (Doc. 61), filed August 18, 2014, at 14.

2010, through January 23, 2010, when he began vomiting. Id. at 18. He also showed additional symptoms after January 23, 2010, through February 10, 2010: dizziness, balance issues, ringing in his ears, and nausea. Id. Plaintiff alleges defendants failed to recognize the obvious symptoms of toxicity; failed to perform routine toxicity tests as recommended for extended use of Gentamicin, particularly since Plaintiff suffered from diabetes and renal insufficiencies; and failed to take ongoing steps to address his serious medical needs. Id. at 19, 24, 26.

In his Motion, Plaintiff seeks appointment of two "neutral, objective medical experts to examine Plaintiff's medical records, examine and test (as needed) Plaintiff," and to report their findings with respect to the following medical issues: "What (if any) serious medical needs or risks were raised or implicated by Defendants' administration of gentamicin? Did Plaintiff suffer permanent injuries . . . . If so, then to what extent (if at all) did the acts or omissions of Defendants in administering gentamicin to Plaintiff constitute deliberate indifference to Plaintiff's serious medical needs?" Motion at 1, 2, 5. According to Plaintiff, "the existence and nature of serious medical needs or risks and the consequences of ignoring or failing to address them lie almost exclusively within the purview of medical expertise." Id. at 5.

Defendants, in two separate responses,[2] object to the appointment of an expert for two reasons: they assert a medical expert opinion is not appropriate in a deliberate indifference claim and they object to Plaintiff's request to apportion the costs to them. (Doc. 103, Smith and Caraballo's Response at 4, 8; Doc. 104, Beiser's Response at 3). Neither Defendant objects to, or raises questions about, the qualifications of either expert identified in Plaintiff's Motion.

---

[2] Defendant Beiser submitted a response separately from Defendants Smith and Caraballo.

An Eighth Amendment deliberate indifference claim requires both an objective and a subjective inquiry:

> The Eighth Amendment's prohibition against "cruel and unusual punishments" protects a prisoner from "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). To state a claim of unconstitutionally inadequate medical treatment, a prisoner must establish "an objectively serious [medical] need, an objectively insufficient response to that need, subjective awareness of facts signaling the need, and an actual inference of required action from those facts." *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir.2000).

<u>Kuhne v. Florida Dep't of Corr.</u>, 745 F.3d 1091, 1094 (11th Cir. 2014). First, to establish a deliberate indifference claim, a plaintiff is required to show that he suffered "an objectively serious medical need." <u>Id.</u>; <u>see also</u> <u>Kruse v. Williams</u>, 592 F. App'x 848, 856 (11th Cir. 2014), citing <u>Estelle v. Gamble</u>*,* 429 U.S. 97, 104-05 (1976).

> A medical need that is serious enough to satisfy the objective component 'is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.' " <u>Goebert</u>, 510 F.3d at 1326 (quoting <u>Hill v. Dekalb Reg'l Youth Det. Ctr.</u>, 40 F.3d 1176, 1187 (11th Cir.1994)). "In either case, 'the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm.' " <u>Brown v. Johnson</u>, 387 F.3d 1344, 1351 (11th Cir. 2004) (alteration in original) (quoting <u>Farrow</u>, 320 F.3d at 1243).

<u>Harris v. Prison Health Servs.</u>, No. 15-13791, 2017 WL 3616341, at *5 (11th Cir. Aug. 23, 2017).

The Court notes that it previously indicated Defendant Beiser does not dispute Plaintiff had a serious medical need, <u>see</u> Order, (Doc. 61) at 9, a conclusion based on a review of Beiser's Motion to Dismiss in which he asserted Plaintiff had not sufficiently alleged he "acted with deliberate indifference *to his medical needs*." (Doc. 31; Beiser's Motion to Dismiss at 5) (emphasis added). However, in light of Plaintiff's present Motion

3

and Defendants' Responses in Opposition (Docs. 103, 104), it appears whether Plaintiff suffered a serious medical need is indeed in contention.

For example, Plaintiff characterizes the issue as whether the administration of Gentamicin caused a serious medical need or risk. Motion at 4. In their Responses, Defendants assert that the "serious medical need . . . was not the administration of Gentamicin, but rather the infection arising from an infected boil on the Plaintiff's buttocks." Beiser Objection at 3 n.2; Smith and Caraballo Objection at 3 n.5. While the Defendants maintain an expert medical opinion is not appropriate to support the subjective inquiry of the deliberate indifference test, they disregard the necessity of such an expert with regard to the threshold objective inquiry: whether plaintiff suffered a serious medical need and whether Defendants' response to any serious medical need was objectively insufficient. See Kuhne, 745 F.3d at 1094.

According to Rule 706(a), a court "may appoint any expert the parties agree on and any of its own choosing" as long at the expert "consents to act." Fed. R. Evid. 706(a). The decision whether to appoint an expert is within the sound discretion of the district court and is appropriate "where the evidence or testimony at issue is scientifically or technically complex." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1348 (11th Cir. 2003). Whether Plaintiff suffered a serious medical need as a result of the administration of Gentamicin is sufficiently complex to warrant expert testimony. This is especially true in this case where the parties dispute what the nature of the serious medical need is (complications arising from a boil, or administration of an antibiotic to a patient with renal problems).

To the extent Plaintiff asserts the Defendants should have tested him for toxicity earlier and at specific times, in accordance with the manufacturer's recommendations,

this Court recognizes expert testimony is necessary.³ See, e.g., Steele v. Shah, 87 F.3d 1266, 1271 (11th Cir. 1996) (recognizing, as dicta, that an expert medical opinion as to the appropriate standard of psychiatric care "obviously may be important" for the fact finder), citing Rogers v. Evans, 792 F.2d 1052, 1062 (11th Cir. 1986) ("Whether [administration of medications] was a matter of gross incompetence, negligence, or medical judgment is disputed and a proper subject of expert testimony."); German v. Broward Cty. Sheriff's Office, 315 F. App'x 773, 778 (11th Cir. 2009) (recognizing, as dicta, "the appointment of a medical expert may be warranted" on remand because the defendant may deny the plaintiff suffered a serious medical need, thus raising an issue requiring a medical conclusion).

With regard to the subjective inquiry, the Court recognizes that expert testimony *may* not be helpful or appropriate, but the Eleventh Circuit has not gone so far as to hold it may *never* be appropriate. See Campbell v. Sikes, 169 F.3d 1353, 1371 (11th Cir. 1999) (holding the parties' retained expert medical testimony did not, on the facts presented, support a finding that defendant had subjective knowledge of a substantial risk of harm because, at most, the testimony permitted the trier of fact to draw an "inference that [the defendant] should have perceived the risk of harm but not an inference that the doctor actually did perceive the risk"), citing McKee v. Turner, No. 96-3446, 1997 WL 525680, at *5 (6th Cir. Aug. 25, 1997) (finding a plaintiff's medical expert's testimony was "wholly insufficient" with regard to the subjective inquiry because, at most, it demonstrated a difference of opinion among medical professionals). While this Court recognizes expert

---

³ As the Court noted in its Order denying Defendants' Motions to Dismiss (Doc. 61), the medical issues involved would be more properly raised in a motion for summary judgment with supporting medical records and other evidence permitted by Rule 56. See Order (Doc. 61) at 12. The Court expects defendants will file motions for summary judgment, at which time the Court will be called upon to rule on complex medical issues.

5

testimony that merely suggests a difference of opinion with regard to a medical provider's course of treatment would not be helpful, the Court may not, at this stage and without the benefit of analyzing expert testimony, reach a conclusion with respect to whether such testimony would be appropriate or admissible in support of the subjective inquiry. Thus, this Court reserves a ruling with respect to that question for the appropriate time.

The Court's recognition that it would be aided by expert testimony with regard to the medical issues in this case requires the Court to identify an appropriate, qualified expert, identification of the expert's role, and a determination of appropriate compensation. See Fed. R. Evid. 706(b), (c). Plaintiff has recommended appointment of two experts: Loren J. Bartels, M.D., FACS, and Donald C. Kern, M.D., MPH, CCHP. Motion at 1-2. While the Court would be aided by medical expert testimony, in the interests of judicial economy, two experts are not necessary. The Court will appoint one neutral expert, and finds, based upon a review of each proposed expert's Curriculum Vitae, that Dr. Bartels is appropriate to assist the Court in understanding the relevant medical issues. Dr. Bartels is Board Certified in Otolaryngology, completed a one-year fellowship in otology, neurotology and skull-base surgery, has received multiple academic appointments, and has delivered a host of presentations related to hearing loss, including hearing loss attributed to medical treatment. See Bartels Curriculum Vitae, available at http://www.tampabayhearing.com/bartels.

Plaintiff states he expects Dr. Bartels "would be qualified and able to determine what (if any) serious medical needs or risks were implicated by Defendants' administration of gentamicin to Plaintiff." Motion at 2. Plaintiff has further indicated that Dr. Bartels "has previously served as a neutral, court-appointed expert and has been judicially-accepted/recognized as an expert in his areas of expertise." Id. at 2. Finally,

6

Plaintiff asserts Dr. Bartels has experience with inmate patients and has expressed a willingness to accept judicial appointment as a neutral expert. Id. at 2, 8. Finally, with regard to compensation, the Court accepts as reasonable Dr. Bartels' customary fees included as Exhibit 2 of Plaintiff's Motion (Doc. 102-2). The Court defers a ruling on the appropriate proportion of the parties' payment of Dr. Bartels' fees, to be determined at the conclusion of the case, or at a time the Court deems appropriate. See Fed. R. Evid. 706(c)(2). Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion is **granted in part** and **denied in part**. Plaintiff's Motion is **granted** to the extent stated in this Order. In all other respects, Plaintiff's Motion is **denied without prejudice**.

2. The Court appoints, as a neutral expert, Dr. Loren J. Bartels, M.D., FACS. The **Clerk** is directed to send a copy of this Order to Dr. Bartels. If Dr. Bartels is unwilling or unable to serve as a neutral expert or provide expert testimony on the medical issues in this case (as summarized in this Order), he shall immediately alert this Court by letter.

3. The Court appoints Dr. Bartels to engage in a review of Plaintiff's medical records related to the care he received between January 3, 2010 and February 25, 2010, and provide an opinion, in the form of an Affidavit, as to whether Plaintiff suffered a serious medical need as a result of the administration of Gentamicin. Dr. Bartels' limited appointment is without prejudice to the parties' ability to seek further review subsequent to the submission of his affidavit. The Court does not currently authorize or find necessary a physical examination of Plaintiff or an analysis of any permanent injuries (damages)[4]

---

[4] While Plaintiff indicates Dr. Bartels' expertise would be particularly helpful in analyzing any permanent injuries resulting from Defendants' alleged actions or inactions, the Court finds questions of Plaintiff's injuries premature at this time.

7

stemming from the treatment he received during the stated timeframe. Dr. Bartels' affidavit should be limited to an analysis of Plaintiff's relevant medical records to aid this Court in understanding the protocol for administering Gentamicin, and whether Plaintiff suffered a serious medical need as a result of the administration of Gentamicin.

4. The parties shall confer and coordinate the transmittal to Dr. Bartels of the relevant medical records. If the parties would like to submit to Dr. Bartels additional, relevant documentation, aside from the medical records for the time period referenced, the parties should confer and, if they are unable to agree, submit an appropriate Motion to the Court. If the parties would like to depose Dr. Bartels prior to submission of any dispositive motions, they must seek prior authorization of the Court. In coordinating with and transmitting records to Dr. Bartels, the parties should be mindful of the deadlines set by the Court on December 7, 2017. See Order (Doc. 106).

**DONE AND ORDERED** in Jacksonville, Florida, this 19th day of January, 2018.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6 1/17
c: Counsel of Record

Dr. Loren J. Bartels
Tampa Bay Hearing & Balance Center
5 Tampa General Circle, Suite 610
Harbourside Medical Tower
Tampa, FL 33606-3159