JAMES MELVIN CRAMER,

        Plaintiff,

v.                                     Case No. 3:13-cv-262-J-39JRK

DOCTOR CHRISTOPHER BEISER, et al.,

        Defendants.

_____

## <u>ORDER</u>

Plaintiff James Melvin Cramer, an inmate of the Florida Department of Corrections, who is represented by appointed counsel, is proceeding on an Amended Civil Rights Complaint (Doc. 14; Amended Complaint) pursuant to 42 U.S.C. § 1983. Plaintiff claims Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment in the administration of an antibiotic, gentamicin, prescribed to treat an infection. Amended Complaint at 6, 11-12.

Before this Court are the following motions: (1) Plaintiff's and Defendant Beiser's Joint and Unopposed Motion to Dismiss Defendant Dr. Christopher Beiser With Prejudice (Doc. 125; Dismissal Motion); (2) Plaintiff's Renewed Motion to Apportion Costs of Court-Appointed Expert, Dr. Loren J. Bartels, and for Limited Appointment of Dr. Donald C. Kern and Apportionment of His Costs (Doc. 119; Expert Appointment Motion); (3) Plaintiff's Motion for Leave to Propound and to Compel Answers to Counsel-Drafted Interrogatories

(Doc. 110; Discovery Motion); and (4) Plaintiff's Consent Motion for Extension of Scheduling Order Dates (Doc. 127; Extension Motion). Before addressing the three substantive motions, the Court notes that the Extension Motion is due to be granted as set forth in its decretal below.

## I. Dismissal Motion

Plaintiff and Defendant Beiser move the Court to enter an order dismissing Dr. Beiser with prejudice pursuant to either Rule 21 or Rule 41(a)(2), Federal Rules of Civil Procedure. The Dismissal Motion is due to be granted. Because the parties seek a dismissal with prejudice as to all claims against Dr. Beiser, the Court finds the more appropriate authority is grounded in Rule 41(a)(2), not Rule 21 (permitting a court to "drop a party" at any time). See Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1106 (11th Cir. 2004) ("Rule 41 allows a plaintiff to dismiss all of his claims against a particular defendant."); see also Schoenfeld v. Babbitt, 168 F.3d 1257, 1265 (11th Cir. 1999) (observing that plaintiff voluntarily dismissed one of three defendants under Rule 41 prior to the court's entry of final judgment as to the claims against the other two defendants). The dismissal of Dr. Beiser moots Plaintiff's pending Expert Appointment Motion and Discovery Motion as to him but does not affect the Plaintiff's claims or pending motions against Defendants Armand Smith and Jorge Caraballo.

## II. Expert Appointment Motion

In the Expert Appointment Motion, Plaintiff seeks an order (1) apportioning accrued costs of court-appointed expert Dr. Bartels (for his review of medical records and preparation of his email report), one-third to Plaintiff and two-thirds to Defendants Smith and Jorge Caraballo; (2) apportioning future costs of court-appointed expert Dr. Bartels,

100% to Defendants[1] or, alternatively, one-quarter to Plaintiff and three-quarters to Defendants; (3) appointing Dr. Donald C. Kern as a neutral expert under Rule 706 "for the limited purpose of . . . evaluat[ing] whether the acts and omissions of Defendants in administering gentamicin to Plaintiff . . . constituted deliberate indifference to the risks of Plaintiff suffering injuries"; (4) and apportioning costs of Dr. Kern's expert fees in accordance with his findings. See Expert Appointment Motion at 1-2. In support of his Expert Appointment Motion, Plaintiff provides the email report Dr. Bartels prepared (Doc. 119-1; Bartels Report).

Defendants filed a Response to Plaintiff's Expert Appointment Motion (Doc. 123; Def. Resp.), asserting that appointment of an additional expert is not necessary "for this medical deliberate indifference case because the objective inquiry of standard of care is not pertinent to the subjective standard"; claiming that Plaintiff is inappropriately using Rule 706 to fund his litigation; and disputing the Plaintiff's proposed apportionment of expert costs. See Def. Resp. at 4, 5-6, 8. Defendants also state that Dr. Bartels has not answered the question posed to him: whether the administration of gentamicin caused Plaintiff to suffer a serious medical need. Id. at 2.

### A. Appointment of Dr. Kern as a Neutral Expert under Rule 706

In pertinent part, Rule 706 states,

> On a party's motion or on its own, the court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

---

[1] In light of the dismissal of Defendant Beiser, the Court's reference to "Defendants" in the remainder of this Order will refer to Dr. Page Armand Smith and Dr. Jorge Caraballo unless otherwise noted.

Fed. R. Evid. 706(a). Expert testimony is appropriate when "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The decision as to whether to appoint an expert "is vested in the sound discretion" of the district court. Quiet Technology DC-8, Inc. v. Hurel-Dubois UK, Ltd., 326 F.3d 1333, 1349 (11th Cir. 2003). The Court is obliged to fairly consider the request to appoint an expert and provide a reasoned explanation for its decision. Steele v. Shah, 87 F.3d 1266, 1271 (11th Cir. 1996). In doing so, the Court is mindful of its responsibility to ensure that the "goal is not to assist a particular party, but to assist the fact-finder." Shipman v. United States, No. 5:15cv133/MP/CJK, 2016 WL 4992104, at *9 (N.D. Fla. June 6, 2016), report and recommendation adopted by No. 5:15-cv-00133-MP-CJK, 2016 WL 5024224 (N.D. Fla. Sept. 15, 2016).

An Eighth Amendment claim for deliberate indifference may not be sustained where a plaintiff demonstrates conduct that amounts to negligence. Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999). "To prevail on a deliberate indifference to serious medical need claim, Plaintiffs must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009). The Supreme Court has articulated a subjective deliberate indifference test that requires a plaintiff to prove a defendant acted with "a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the subjective component, a plaintiff must prove the following: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cty.,

601 F.3d 1152, 1158 (11th Cir. 2010). "Whether a [defendant] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a [defendant] knew of a substantial risk from the very fact that the risk was obvious." Farmer 511 U.S. at 842 (internal citations omitted).

The Eleventh Circuit has recognized that expert testimony may constitute permissible circumstantial evidence to demonstrate the subjective component in a deliberate indifference case. See Steele, 87 F.3d at 1269, 1271 (citing Farmer, 511 U.S. at 842). In Steele, the court stated that "the quality of [medical] care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to [] serious [medical] needs." Id. at 1269. There, the court reversed entry of summary judgment in the defendant's favor, holding the jury could have concluded that the defendant "knew of a substantial risk from the very fact that the risk was obvious." Id. at 1270. The court specifically instructed the district court to reconsider, on remand, plaintiff's motion to appoint an expert "to [e]nsure a just resolution of the claim." Id. at 1271. Accord German v. Broward Cty. Sheriff's Office, 315 F. App'x 773, 777-78 (11th Cir. 2009) (recognizing, as dicta, that "the appointment of a medical expert may be warranted" to determine whether defendants were deliberately indifferent to a serious medical need, which plaintiff argued concerned medical issues beyond the understanding of a lay person). See also Rogers v. Evans, 792 F.2d 1052, 1062 (11th Cir. 1986) ("Whether [administration of a medication] was a matter of gross incompetence, negligence, or medical judgment is disputed and a proper subject of expert testimony.").[2]

---

[2] The Rogers case was decided prior to the Supreme Court's Farmer decision. However, the Rogers court articulated the relevant legal standard accurately, and courts continue to cite it as good authority in medical

In this case, the court will be called upon to decide a question similar to the one at issue in Rogers: whether the administration of a drug was within acceptable standards or "was so wide of the mark as to be far below the minimum standards of medical care." Cf. Rogers, 792 F.2d at 1060. Because an answer to this question is not within a layperson's common knowledge, this case is distinguishable from the Seventh Circuit opinion relied upon by Defendants. See Ledford v. Sullivan, 105 F.3d 354, 359 (7th Cir. 1997). The plaintiff in Ledford claimed the defendants were deliberately indifferent to a serious medical need when they prevented him from taking a prescribed medication (Zoloft) for eleven days. Id. at 355-56. The court held that the trial court acted within its discretion in denying plaintiff's motion to appoint an expert under Rule 706 because the facts and issues in that case were not so complex as to warrant expert testimony. Id. at 359. Because the plaintiff experienced symptoms of which most lay people have an understanding or familiarity (dizziness, nausea, vomiting, skin crawling), expert testimony was not necessary to enable the jury to decide whether those symptoms caused a life-threatening condition or a risk of permanent impairment. Id. at 359-60.

Unlike the side effects experienced when abruptly stopping a commonly-prescribed oral medication such as Zoloft, risks associated with the administration of an IV antibiotic used to treat an infection in a patient with documented renal problems is not within the common knowledge of those not trained in medicine. Cf. id. Moreover, the Ledford opinion does not stand for the proposition that medical expert testimony is never

---

deliberate indifference claims. See, e.g., Truss v. Warden, 684 F. App'x 794, 797 (11th Cir. 2017) (distinguishing Rogers because the plaintiff failed to "put forth evidence to show that the prison defendants failed to comply with the established procedures for diagnosing and preventing TB or that those procedures were constitutionally inadequate"); see also Enriquez v. Kearney, 694 F. Supp. 2d 1282, 1296 (S.D. Fla. 2010) (citing Rogers for the proposition that the deliberate indifference "standard is met only where egregious conduct is present, as in instances where the prisoner is subjected to repeated examples of delayed, denied, or grossly incompetent or inadequate medical care").

appropriate in a deliberate indifference case. And, more importantly, the Eleventh Circuit has not gone so far as to impose such a limitation, but has merely cautioned that an expert's testimony must do more than permit a conclusion that a defendant medical provider <u>should</u> have been aware of a risk but failed to appreciate it. <u>Campbell</u>, 169 F.3d at 1371. "Allowing expert testimony that [defendant] should or would have known [of a risk] . . . would nullify <u>Farmer's</u> requirement of subjective mental intent." <u>Id.</u> at 1370-71.

In <u>Campbell</u>, the court noted that the parties' retained experts offered contrary opinions with respect to whether defendants knew they provided grossly incompetent care; thus, the expert opinions did "not provide the missing link" as to the defendants' subjective mental intent. <u>Id.</u> at 1372. The Court implied, however, that expert testimony may provide circumstantial evidence of a defendant's subjective knowledge in appropriate cases, recognizing the reality that "rarely if ever will a defendant medical professional admit that he knew his course of treatment was grossly inadequate." <u>Id.</u> at 1371-72 (citing with approval <u>Steele</u>). <u>See also</u> <u>Weathers v. Lanier</u>, No. 4:05-CV-11-RLV, 2007 WL 3046465, at *2 (N.D. Ga. Oct. 12, 2007) (holding that while the Eleventh Circuit, in <u>Campbell</u>, came close to absolutely excluding expert testimony on the subjective component, "it stopped just short of that line"). Thus, the inquiry to appoint a neutral expert under Rule 706 is viewed through a wider lens than an analysis of whether the expert opinion demonstrates a question of fact, or provides the "missing link," as to the subjective deliberate indifference test articulated in <u>Farmer</u>. <u>See</u> <u>Campbell</u>, 169 F.3d at 1371.

Given the factual and legal complexities involved here, as highlighted by Dr. Bartels' report and the parties' disputed interpretations of his report, the Court finds that the finder of fact would benefit from medical expert "to understand the evidence or to

7

determine a fact in issue."[3] <u>See</u> Fed. R. Evid. 702. For example, Dr. Bartels notes that the medical records do not indicate where "BUN/Creatinine levels were sufficiently frequently measured and did not find that gentamicin trough levels were measured," and he states that gentamicin use is outdated and doses should be lowered in patients, such as Plaintiff, with documented renal problems. <u>See</u> Bartels Report at 1, 2. Dr. Bartels also concludes that "negligent supervision of the medical student [Dr. Beiser] is a glaring issue in this medical record." <u>Id.</u> at 3. On the other hand, Dr. Bartels notes that Plaintiff's condition initially improved after he was transferred to the hospital and, while he developed vertigo, he may have had vertigo initially. <u>Id.</u> at 1. Plaintiff also complained of hearing loss prior to the administration of gentamicin, and Plaintiff was non-compliant with his diet, which may have been a contributing factor.[4] <u>Id.</u> at 1, 2.

Whether Defendants knew they were providing grossly inadequate medical treatment requires an explanation and understanding of the applicable standard of care, which, in this case, requires specialized knowledge. Thus, pursuant to its discretionary authority under Rule 706, the Court finds that Dr. Kern should be appointed as a second neutral expert. Dr. Kern's expertise is appropriate to assist the Court in understanding the relevant medical issues.[5] According to the curriculum vitae Plaintiff submitted with his initial motion to appoint an expert (Doc. 102-1), Dr. Kern has substantial experience with

---

[3] Recognizing that expert medical testimony would aid the finder of fact is not to suggest that such testimony would be considered to the exclusion of Defendants' own testimony regarding their subjective intent as to the medical care they provided to Plaintiff at the relevant time. To be clear, the Court does not suggest that medical expert testimony must necessarily dictate the resolution of the factual and legal dispute between the parties, but will merely assist the trier of fact in understanding the evidence and reaching a decision within the parameters of binding law.

[4] To the extent Defendants find Dr. Bartels' report does not answer the specific question posed by the Court, they may depose Dr. Bartels to elucidate his opinion regarding the relevant medical issues. <u>See</u> Fed. R. Evid. 706(b)(2); Order (Doc. 116), dated April 11, 2018.

[5] Defendants object only to the appointment of a second expert but do not object to Dr. Kern's qualifications or ability to serve as a neutral expert in this case.

correctional health: he is a certified correctional health professional, has delivered numerous correctional health presentations, and has served as Medical Director and Special Consultant for Correctional Health Services in New York, among other qualifications. In his first motion seeking appointment of an expert under Rule 706 (Doc. 102; Original Motion), Plaintiff stated that Dr. Kern has not previously served as a neutral court-appointed expert, though "he has been retained as an expert in prior cases (sometimes by plaintiffs and sometimes by defendants) and has been judicially-accepted/recognized as an expert in his areas of expertise." See Original Motion at 3. Plaintiff also asserted that Dr. Kern has expressed a willingness to accept judicial appointment as a neutral expert. Id. at 8.

## B. Apportionment of Expert Costs

Rule 706 provides that an "expert is entitled to a reasonable compensation, as set by the court. . . . [and] is payable . . . by the parties in the proportion and at the time that the court directs—and the compensation is then charged like other costs." Fed. R. Evid. 706(c), (c)(2). The Eleventh Circuit has intimated that a party's indigent status may be a relevant factor in a court's decision to appoint an expert, in part because an indigent litigant "may not have the wherewithal to locate and/or pay for an expert." Steele, 87 F.3d at 1271 (quoting Michael H. Graham, Federal Practice and Procedure § 6681, at 355 (interim ed. 1992)). The Seventh Circuit has cited the Eleventh Circuit's Steele decision, and decisions of other circuit courts, to support an interpretation of Rule 706 that would permit a court to apportion expert costs to only one side where appropriate. See Ledford, 105 F.3d at 361.

> We caution against reading Rule 706(b) in such a narrow
> fashion that the rule would allow for court-appointed experts

> only when <u>both</u> sides are able to pay their respective shares. Read in such a restrictive way, Rule 706(b) would hinder a district court from appointing an expert witness whenever one of the parties is indigent, even when that expert's testimony would substantially aid the court.

<u>Id.</u> (emphasis in original).

Because the Court has appointed Dr. Bartels and Dr. Kern as neutral experts to assist the fact finder, the Court finds that the parties should bear the costs in equal shares. Thus, Plaintiff, Defendant Smith, and Defendant Jorge Caraballo, shall each be responsible for one-third of all expert fees charged by Dr. Bartels to date, <u>see</u> Doc. 126-1 (Dr. Bartels' invoice for his review of records and preparation of his email report), and one-third of the fees to be charged by Dr. Bartels and Dr. Kern in the future, subject to the Court's obligation to award costs to the prevailing party at the conclusion of the case. <u>See</u> Fed. R. Civ. P. 54(d).

### III. Discovery Motion

Plaintiff moves the Court to enter an order permitting him leave to propound and to compel Defendants to answer 15 additional interrogatories beyond those Defendants answered in 2014 when Plaintiff was proceeding pro se. According to Plaintiff, "[w]ith the exception of the <u>net worth</u> interrogatory, these counseled interrogatories focus on securing material facts relevant to a <u>just</u> resolution of key liability and defense issues." <u>See</u> Discovery Motion at 6 (emphasis in original). Plaintiff also asserts that permitting the additional interrogatories may reduce the costs associated with and the scope of Defendants' depositions. <u>Id.</u> at 7. Defendants object to the Discovery Motion (Doc. 113; Discovery Motion Resp.), arguing that their counsel spent in excess of eleven hours preparing and finalizing responses to the original interrogatories and made efforts to directly answer the admittedly confusing and vague interrogatory requests. <u>See</u> Disc.

Motion Resp. at 4, 7 n.3. Defendants further maintain that Plaintiff impermissibly seeks a "do over" since his original interrogatories were drafted without the benefit of counsel and did not elicit ideal responses. Id. at 4

Rule 33, Federal Rules of Civil Procedure, specifically limits parties to "no more than 25 written interrogatories . . . ." However, a party may seek leave to serve additional interrogatories, and a court may, in its discretion, grant such a request "to the extent consistent with Rule 26(b)(1) and (2)." According to the Advisory Committee Notes explaining the 1993 amendments to Rule 33, "the aim [of the numerical limitation] is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device." The 15 proposed interrogatories, which Plaintiff includes in his Motion, appear to seek information "relevant . . . and proportional to the needs of the case," per Rule 26(b)(1). Indeed, all but one of the proposed interrogatories are specifically aimed at the heart of the substantive issue between the parties: whether Defendants knew of a serious medical need in their administration of gentamicin and if so, whether they were deliberately indifferent to that serious medical need.[6]

In the spirit of positioning the Court to reach a just resolution, and because the parties dispute whether Defendants acted with the requisite mental intent, the Court will grant Plaintiff's Discovery Motion to the extent that Plaintiff seeks leave to serve an

---

[6] Plaintiff also seeks to propound one interrogatory seeking Defendants' "net worth." To the extent Plaintiff seeks punitive damages, net worth discovery is permitted under Rule 26 of the Federal Rules of Civil Procedure. See, e.g., Williams v. S. Lubes, Inc., No. 1:12-cv-180-SPM-GRJ, 2012 WL 6135170, at *1 (N.D. Fla. Dec. 3, 2012) ("[W]hen punitive damages are sought, a defendant's financial condition becomes relevant."); EEOC v. Ruskin, No. 2:11-cv-158-FtM-36SPC, 2011 WL 3715067, at *3 (M.D. Fla. Aug. 24, 2011) (same).

additional 15 interrogatories on Defendants under Rule 33(a)(1).[7] Defendants must respond to the additional 15 interrogatories by **August 15, 2018**. The Court makes no ruling with respect to whether any of the 15 proposed interrogatories are substantively objectionable in whole or in part, but cautions the parties to confer in good faith to resolve any disagreements without further need for the Court's intervention. The Court also finds that Defendants are not entitled to fees and costs incurred in responding to Plaintiff's Discovery Motion, under Rule 37(a)(5)(B), in light of its ruling granting the motion for leave to propound additional interrogatories under Rule 33(a)(1).

Accordingly, it is now

**ORDERED:**

1. Plaintiff's and Defendant Beiser's Joint and Unopposed Motion to Dismiss Defendant Dr. Christopher Beiser With Prejudice (Doc. 125) is **GRANTED**. Defendant Beiser is **DISMISSED with prejudice** pursuant to Rule 41(a)(2). Plaintiff and Defendant Besier will each bear their own attorneys' fees and costs.

2. Plaintiff's Renewed Motion to Apportion Costs of Court-Appointed Expert, Dr. Loren J. Bartels, and for Limited Appointment of Dr. Donald C. Kern and Apportionment of His Costs (Doc. 119) is **GRANTED in part**:

(a)      The Court grants Plaintiff's motion to apportion costs of court-appointed experts to the extent that the parties should bear such costs in equal shares. Plaintiff, Defendant Smith, and Defendant Jorge Caraballo, shall each be responsible for one-third of all expert fees charged by Dr. Bartels to date, and one-third of the fees to be charged

---

[7] An order compelling responses to additional interrogatories is not appropriate at this time because Defendants were under no obligation until now to respond to additional interrogatories.

by Dr. Bartels and Dr. Kern in the future, subject to the Court's obligation to award costs to the prevailing party at the conclusion of the case.

(b)     The Court grants Plaintiff's motion to appoint **Dr. Donald C. Kern** as a neutral expert pursuant to Rule 706. As a neutral, court-appointed expert, Dr. Kern must advise the parties of any findings he makes with respect to the following issues:

(i)     Whether Plaintiff suffered a serious medical need as a result of the administration of gentamicin.

> A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." In the alternative, a serious medical need is determined by whether a delay in treating the need worsens the condition. In either case, "the medical need must be one that, if left unattended, poses a substantial risk of serious harm."

Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1307 (11th Cir. 2009) (internal citations omitted).

(ii)     Whether Defendants rendered care that deviated from accepted standards with respect to the administration of gentamicin. To the extent he is able, Dr. Kern should consider and address whether the relevant records demonstrate that Defendants were "aware of facts . . . from which [they] could draw the inference that [their] . . . course of treatment presented a substantial risk of serious harm to Plaintiff and whether [they] actually drew that inference but persisted in the course of treatment anyway." Campbell, 169 F.3d at 1371 (internal numbering omitted).

If Dr. Kern is unwilling or unable to serve as a neutral expert or is unable to reach findings on the medical issues in this case as outlined above, he shall alert this Court by letter no later than **August 8, 2018**. The Court stresses that it appoints Dr. Kern as a neutral expert to aid the Court and not to serve as a witness for any party. Dr. Kern's

findings may be memorialized in an informal report, which he shall transmit to Plaintiff, Defendants Smith and Jorge Caraballo, and the Court. In addition, as set forth in Rule 706(b), Dr. Kern "may be deposed by any party; may be called to testify by the court or any party; and may be cross-examined by any party."

The parties shall confer and coordinate the transmittal to Dr. Kern relevant medical records and other documentation Dr. Kern may require, including Dr. Bartels' email report. In communicating with Dr. Kern, the parties should ensure they work jointly, not ex parte, to avoid compromising Dr. Kern's status as a court-appointed expert. Any questions Dr. Kern may have about the scope of his appointment as a neutral expert should be directed to the Court by letter or, alternatively, by email to the undersigned's courtroom deputy Chloe Swinton, chloe_swinton@flmd.uscourts.gov. If Dr. Kern would like oral clarification with regard to his appointment or the scope of his role as a neutral expert, the Court will arrange a telephonic conference during normal business hours, in which the parties will have an opportunity to participate.

3. Plaintiff's Motion for Leave to Propound and to Compel Answers to Counsel-Drafted Interrogatories (Doc. 110) is **GRANTED** to the extent Plaintiff may serve an additional 15 interrogatories on Defendants under Rule 33(a)(1). Notwithstanding the revised discovery deadline set forth below, Defendant must respond to the additional 15 interrogatories by **August 15, 2018**.

4. The **Clerk** is directed to send a copy of this Order to Dr. Kern.

5. The parties' Consent Motion for Extension of Scheduling Order Dates (Doc. 127) is **GRANTED.** The Court finds good cause to extend the following deadlines:

(a)     All discovery shall be completed by **October 1, 2018**;

(b)      Any motions relating to discovery shall be filed by **October 9, 2018**;

(c)      All motions to dismiss and/or for summary judgment shall be filed by

**November 13, 2018**;

(d)      Responses to any motions to dismiss and/or for summary judgment shall

be filed by **December 7, 2018;** and

(e)      Joint Pretrial Statement shall be filed by **January 11, 2019.**

**DONE AND ORDERED** in Jacksonville, Florida, this 13th day of July, 2018.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6

**c:**
Counsel of Record

Donald C. Kern
Quality Correctional Health Care
Suite A
200 Narrows Pkwy.
Birmingham, AL 35242