UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JAMES MELVIN CRAMER,

            Plaintiff,

v.                                                      Case No. 3:13-cv-262-BJD-LLL

DR. PAGE ARMAND SMITH and
DR. JORGE-CARABALLO,

            Defendants.

_____

## ORDER

This cause is before the Court on numerous motions in limine, all of which relate to the expected trial testimony of Court-appointed experts, Dr. Loren J. Bartels, and Dr. Donald C. Kern. As summarized in the parties' joint statement of the nature of the action (Doc. 218), Plaintiff alleges doctors working with the Florida Department of Corrections "were deliberately indifferent to his serious medical needs with respect to the manner in which they administered the antibiotic gentamicin for treatment of an infection in early 2010," when Plaintiff housed at the Reception and Medical Center (RMC).

### A. Plaintiff's Motion In Limine

Plaintiff moves the Court for a pretrial "ruling that the opinions of the Court-appointed experts . . . satisfy the requirements for admissibility under" Rule 702 of the Federal Rules of Evidence (Doc. 197). Defendants partially oppose the motion (Doc. 201). Defendants do not object to the Court-appointed experts offering testimony to the extent they are "qualified" to offer opinions and were able to formulate opinions within a reasonable degree of medical certainty. Doc. 201 ¶ 2. However, Defendants argue neither expert should be permitted to offer causation testimony regarding Plaintiff's balance problem and hearing loss or Plaintiff's chronic (long-term) kidney disease. Id. ¶¶ 4, 6, 7, 12, 16. Additionally, Defendants contend neither expert should be permitted to testify whether Defendants' decisions to prescribe gentamicin—to the exclusion of other available antibiotics—were reasonable. Id. ¶ 13. Finally, Defendants assert the experts should not be permitted to testify that Defendants breached the standard of care in administering gentamicin because Plaintiff must prove Defendants' conduct amounts to deliberate indifference, not medical malpractice. Id. ¶ 18.

Defendants argue the experts' expected causation testimony related to balance, hearing, and chronic kidney disease are not reliable because they did not rule out other potential causes or engage in a differential diagnosis. Id. at

2

8-9. Additionally, Defendants accuse the experts of reaching their causation conclusions solely based on temporal considerations.

Rule 702 provides as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. This Court previously found expert testimony will help the trier of fact understand the evidence. See Orders (Docs. 107, 116, 128, 169). What the parties dispute is whether the Court-appointed experts' opinions (as to balance, hearing, and chronic kidney disease) are reliable, which requires the Court to assess "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592-93 (1993) ("Daubert analysis"). "The court need not undertake an extensive Daubert analysis on the general toxicity question when the medical community recognizes that the agent causes the type of harm

a plaintiff alleges." <u>McClain v. Metabolife Int'l, Inc.</u>, 401 F.3d 1233, 1239 (11th Cir. 2005).

This case concerns a general toxicity question, and the medical community, and the parties, agree that gentamicin causes the type of harm Plaintiff alleges. More specifically, the parties do not dispute that gentamicin carries potentially serious side effects, including nephrotoxicity (damage to the kidneys) and ototoxicity (damage to the ears). <u>See</u> Order (Doc. 159) at 13 (summarizing the evidence offered at summary judgment). The issues in this case are narrow: whether Defendants were deliberately indifferent in their administration of gentamicin and, if so, whether gentamicin toxicity caused Plaintiff's injuries.

After review of the parties' briefing and the experts' deposition testimony, and for the reasons that follow, the Court finds Dr. Kern's and Dr. Bartels's opinions—those they have reached within a reasonable degree of medical certainty—are sufficiently reliable and admissible under Rule 702.[1] Before addressing their opinions relating specifically to Plaintiff's claimed

---

[1] Dr. Kern has drawn conclusions in response to the Court's questions whether the relevant records demonstrate the Defendants were aware of facts from which they could "draw the inference that their course of treatment presented a substantial risk of serious harm," whether they actually drew such an inference, and whether, with that knowledge, they "persisted in their course of treatment." Doc. 197-3 at 14. Defendants do not appear to object to this testimony. <u>See</u> Doc. 201.

injuries, the Court notes that both Dr. Kern and Dr. Bartels agree Defendants administered gentamicin without ordering blood tests to monitor gentamicin concentration levels. Doc. 197-3 at 54, 56, 58; Doc. 197-4 at 23-24, 50, 54. Defendants do not dispute that they failed to order the recommended blood tests to monitor the concentration level of gentamicin in Plaintiff's blood. See Order (Doc. 159) at 13-14 (summarizing the evidence submitted by the parties on summary judgment); see also Docs. 205, 206, 211, 212 (Defendants' motions, acknowledging Plaintiff's "blood was not monitored for toxicity").

### i. Balance & Hearing

Neither Dr. Kern nor Dr. Bartels were able to reach a conclusion with any medical certainty whether and to what extent gentamicin toxicity worsened Plaintiff's hearing because there were no pre-gentamicin hearing tests available to review. Doc. 197-3 at 42-43, 49; Doc. 197-4 at 38. Dr. Kern and Dr. Bartels have acknowledged during their depositions the limits to which they can testify in this case based upon their expertise and the facts available. Thus, it appears neither expert proposes to offer an opinion that is merely speculative. In fact, Dr. Kern expressly testified, "I … could not reach a conclusion one way or the other" regarding Plaintiff's hearing loss. Doc. 197-3 at 42-43. Similarly, Dr. Bartels testified, "I have a harder time evaluating how

much of [Plaintiff's] hearing loss may be related to [g]entamicin." Doc. 197-4 at 29, 38, 55, 59, 93.

Given the experts acknowledge they are unable to opine the extent to which Plaintiff's hearing loss may be attributable to gentamicin toxicity, Plaintiff's motion is due to be denied as to this testimony.

Causation testimony about Plaintiff's balance problem is different, at least with respect to Dr. Bartels. Dr. Kern does not offer an opinion that gentamicin caused Plaintiff's balance issues within a reasonable degree of medical certainty. Accordingly, to the extent Plaintiff seeks an order that Dr. Kern's comments about balance issues are admissible, his request is due to be denied.

However, Dr. Bartels does offer a reliable, convincing opinion on this issue.[2] Dr. Bartels opines within a reasonable degree of medical certainty that gentamicin toxicity "completely wiped out" the "balance organ function" in Plaintiff's ears. Id. at 29. Dr. Bartels reached this opinion after reviewing relevant medical records and conducting objective testing.[3] Dr. Bartels

---

[2] Contrary to defense counsel's contention, Dr. Bartels did not testify that "there was not enough information to reach a conclusion regarding balance loss due the lack [sic] of testing prior to prior [sic] treatment." Doc. 201 ¶ 4. Rather, Dr. Bartels said he could not reach a conclusion about the cause for Plaintiff's asymmetric hearing loss because he did not "have enough preexisting records to say how much" his hearing loss worsened after the gentamicin. Doc. 197-4 at 38.

[3] Defense counsel's suggestion that Dr. Bartels stated his opinion is admissible simply because he "says so" is troublesome. The only person who characterized Dr.

reviewed Plaintiff's audiovestibular function by conducting a videonystagmography (VNG), which partially consists of putting warm and cool air or water in the ear canal and watching the patient's eye movements. Id. at 91-92. A patient with normal balance organ function will have a nystagmus reaction, meaning the eyes will move reflexively. Id. In Plaintiff's case, he "definitively showed no response" to the stimuli. Id. at 91-92, 102. Based on the evidence he reviewed and the tests he conducted, Dr. Bartels said there is "heavy evidence of [g]entamicin toxicity . . . and you just can't get past that." Id. at 100. He describes the objective data showing that Plaintiff's balance issues were caused by gentamicin toxicity as "a mountain-sized piece of evidence." Id.

    In formulating his opinions, Dr. Bartels was aware of and considered that Plaintiff had pre-existing diabetes with associated conditions, including diabetic neuropathy. Id. at 16, 30. He explained that the results of Plaintiff's VNG test do not occur "because of peripheral neuropathy." Id. However, Plaintiff's peripheral neuropathy compounds Plaintiff's balance problem in that the condition "makes it difficult to adapt to what the inner ear has lost." Id. at 33.

---

Bartels's opinions as the "because-I-said-so" variety was defense counsel herself. Doc. 107-4 at 86, 88, 89.

Dr. Bartels opines, "[g]entamicin is more toxic to the balance organ than it is to hearing [and] . . . within reasonable medical probability," gentamicin toxicity caused Plaintiff's "loss of balance." <u>Id.</u> at 38. When defense counsel challenged him, Dr. Bartels stated it again: "If you look at history of problems onset in February of 2010 and put that together with the tests, you have the inescapable, beyond reasonable medical probability, [conclusion] that the balance problem from the inner ear is related to [g]entamicin," and Plaintiff's pre-existing diabetic neuropathy, which "typically involves the lower extremities," compounds the severity of Plaintiff's balance problem. <u>Id.</u> at 31, 39.

Dr. Bartels said the medical records he reviewed presented nothing that even "might [have suggested] an alternative diagnoses [sic]" with respect to Plaintiff's loss of balance organ function. <u>Id.</u> at 82-83. When asked how he could attribute Plaintiff's balance problems to gentamicin toxicity ten years after the fact, Dr. Bartels responded, "[W]e have nothing else in the medical record that would explain virtually complete loss of stimulus response the warm and cool water. In other words, we don't have an alternative explanation." <u>Id.</u> at 126.

Dr. Bartels explained he can opine that gentamicin caused near complete loss of balance organ function even in the absence of prior balance organ testing for comparison. He observed that Plaintiff complained of vertigo in the past,

but "it was not a chronic complaint," as it is now. Id. at 48. Dr. Bartels addressed one specific incident in which Plaintiff complained of vertigo upon standing up. Dr. Bartels said that incident of vertigo "would be suggestive of ... postural hypotension." Id. at 98. Plaintiff likely experienced dizziness when he stood up quickly because of "transient low blood pressure." Id. Comparing that incident to Plaintiff's present balance problems, Dr. Bartels noted, "[g]entamicin does not produce dizziness that first becomes apparent with standing up." Id.

Upon review, the Court finds Dr. Bartels's opinion regarding Plaintiff's balance problem reliable and admissible under Rule 702. Thus, Plaintiff's motion will be granted to that extent.

### ii. Chronic Kidney Disease

Dr. Bartels stated he is "not a kidney specialist." Id. 197-4 at 51. Thus, Plaintiff's motion is due to be denied to the extent he seeks to ask Dr. Bartels whether gentamicin caused long-term kidney damage.

Dr. Kern opines within a reasonable degree of medical certainty that gentamicin toxicity caused acute, sudden decline in Plaintiff's kidney function. Doc. 197-3 at 34, 39, 41, 60. Dr. Kern explained Plaintiff suffered "an episode of acute renal failure, which diabetes does not cause." Id. at 60. Defendants do not object to this testimony under Rule 702. However, there is some lack of

clarity about Dr. Kern's opinion and expected trial testimony with respect to Plaintiff's <u>chronic</u> kidney disease. At deposition, Dr. Kern testified that he concluded gentamicin is a contributing factor to Plaintiff's chronic kidney disease, but he is unable to conclude with any medical certainty the extent to which gentamicin contributed to Plaintiff's current condition. <u>Id.</u> at 48.

But it appears Dr. Kern's conclusion that gentamicin was a "contributing factor" was based on what defense counsel says is a misinterpretation of another doctor's medical note. Doc. 201 ¶ 4. Dr. Kern said he interpreted a nephrologist's note, written a few months after gentamicin was discontinued, to imply that Plaintiff's "episode of acute renal failure in February of 2010, . . . [which was] drug induced" could partly be responsible for Plaintiff's chronic kidney disease. Doc. 197-3 at 48.

Defense counsel represents she spoke to the nephrologist, Dr. Pelligrini, who concludes, "Plaintiff's kidney functions had returned to pre-treatment levels following treatment by the Defendants." Doc. 201 ¶ 11. Given the lack of clarity on this portion of Dr. Kern's opinion, the Court will defer ruling on this component of Plaintiff's motion until trial.

### iii. Standard-of-Care Testimony

Defense counsel's objection to Dr. Kern's or Dr. Bartels's testimony about the standard of care is one the Court has more than once considered and

rejected. <u>See</u> Orders (Docs. 107, 128, 159). As the Court stated in its order on summary judgment, "This case boils down to whether and when a physician's course of treatment crosses the line from mere negligence, which is not actionable under § 1983, to deliberate indifference, which is." <u>See</u> Order (Doc. 159) at 8. In a case like this, whether doctors breached a standard of care is relevant. <u>See, e.g.</u>, <u>Steele v. Shah</u>, 87 F.3d 1266, 1269 (11th Cir. 1996) ("[T]he quality of [medical] care one receives can be so substantial a deviation from accepted standards as to evidence deliberate indifference to [] serious [medical] needs."). Defendants admittedly failed to order blood tests to monitor Plaintiff's creatinine level, and Dr. Bartels stated at his deposition, "That is a standard of care . . . that I just can't imagine breaching." Doc. 197-4 at 70.

Moreover, the Court appointed Dr. Kern and Dr. Bartels to serve as neutral experts to offer opinions related to Defendants' administration of gentamicin. <u>See</u> Orders (Docs. 107, 116, 128, 169). The Court expressly found the trier of fact would benefit from understanding the standard of care for administering gentamicin. <u>See</u> Orders (Docs. 107, 128). Defendants do not argue Dr. Kern or Dr. Bartels are not qualified to offer opinions on these topics, nor do they question the reliability of the expert's opinions on these topics. The Court finds their testimony is reliable and admissible under Rule 702.

### iv. Choice of Medication & Informed Consent

A final point of contention between the parties as related to the Court-appointed experts' testimony regards Defendants' "choice of medication" to treat Plaintiff's infection and whether the experts may opine whether Defendants should have obtained informed consent before administering gentamicin. See Doc. 197 (stating the "experts disagree as to whether a patient . . . needs to provide informed consent"). Defendants maintain the experts should not be permitted to testify on these subjects. Doc. 201 ¶¶ 13, 14. Plaintiff concedes in his motion that a different doctor started the gentamicin, so "Defendants cannot be faulted for the initial prescription." Doc. 197 at 4-5. Thus, it appears Plaintiff has abandoned his intent to question the experts about informed consent.

Plaintiff does not clearly articulate in his motion if he intends to question the experts about whether gentamicin was an appropriate antibiotic to treat Plaintiff's infection. And Defendants file their own motion in limine on this issue, to which Plaintiff has responded. As such, the Court will address this issue in the context of Plaintiff's motion.

### B. Defendants' First Motion In Limine

Defendants move to prevent counsel from referring to Dr. Kern or Dr. Bartels as "neutral, court appointed experts" (Doc. 202), which Plaintiff

opposes (Doc. 204). Rule 706 provides, "The court may authorize disclosure to the jury that the court appointed the expert." Fed. R. Evid. 706(d). Moreover, the Eleventh Circuit pattern jury instruction number 3.4 provides jurors should consider various questions in assessing a witness's credibility. One of those questions is, "Did the witness have a personal interest in the outcome of the case?" Doc. 207 at 4 (Defendants' proposed jury instructions). The jurors will be unable to consider this question with respect to Dr. Kern's and Dr. Bartels's testimony if those witnesses are not identified as Court-appointed, neutral experts.[4] As such, Defendants' motion is due to be denied.

## C. Defendants' Second Motion In Limine

Defendants move the Court to limit expert opinion to the expert's "area of expertise" (Doc. 205). Plaintiff opposes the motion (Doc. 220). The motion does not comply with the Court's Local Rules in that it includes no memorandum of law, and it is unclear precisely what relief Defendants are seeking. Moreover, to the extent Defendants' concerns are the same as those raised in response to Plaintiff's Daubert motion, the motion is moot.

---

[4] The Court has closely and thoroughly reviewed Dr. Kern's and Dr. Bartels's deposition transcripts, and Defendants' contention that the Court-appointed experts have demonstrated "the appearance that they were appointed to assist the Court with Plaintiff's claims," Doc. 202 ¶ 3, is unfounded.

### D. Defendants' Third Motion <u>In</u> <u>Limine</u>

Defendants seek an order preventing Plaintiff from using at trial the deposition transcript of former Defendant Dr. Beiser (Doc. 206). Defendants contend Dr. Beiser's deposition "was not cross noticed as a deposition to be used in lieu of live testimony at trial," and Dr. Beiser's attorney instructed him not to answer some questions, including those about Dr. Beiser's settlement with Plaintiff. Doc. 206 at 2-3. Aside from generally stating that "live testimony is important," <u>id.</u> at 4, Defendants do not indicate what procedural rule or precedent supports the relief they seek.[5]

Rule 32 of the Federal Rules of Civil Procedure addresses the use of deposition testimony at trial. That rule provides, in pertinent part, "At a hearing or trial, all or part of a deposition may be used against a party" if three conditions are satisfied: (1) the party had notice of the deposition or was present or represented at the deposition; the testimony would be admissible under the Federal Rules of Evidence if the deponent were to testify live at trial; and its "use is allowed by Rule 32(a)(2) through (8)." Fed. R. Civ. P. 32(a)(1). Defendants concede their counsel was present at the deposition, but they do not address the other requirements of Rule 32. In other words, it is not clear

---

[5] Defendants represent Plaintiff opposes the motion, Doc. 206 at 5, though Plaintiff has not filed a response.

from Defendants' motion that Dr. Beiser's deposition testimony would be disqualified under Rule 32. Accordingly, Defendants' motion is due to be denied without prejudice subject to their right to assert any appropriate objections at trial if Plaintiff tenders Dr. Beiser's deposition testimony as evidence.

### E. Defendants' Fourth Motion In Limine

Defendants seek an order preventing Plaintiff from asking the Court-appointed experts whether gentamicin was an appropriate choice of medication to treat Plaintiff's infection (Doc. 211). Plaintiff opposes the motion (Doc. 224). Plaintiff says in his response, "The case is not about which antibiotic would have been the best choice for treating Plaintiff's infection." Doc. 224 at 2. Rather, according to Plaintiff, "The issue is whether other antibiotics could have been chosen because they were effective against the bacteria without gentamicin's toxicities." Id. The Court is not persuaded there is a distinction.

The disputes in this case concern how gentamicin was administered given its known potential side effects and whether gentamicin toxicity may have caused any long-term injuries. Defendants themselves admit they did not order the recommended blood testing to ensure safe gentamicin levels. Whether other antibiotics could have been prescribed is not an issue on which expert testimony is necessary in this case. It is within a layperson's understanding that doctors have multiple options when prescribing

15

antibiotics. Moreover, the FDOC's drug formulary (Doc. 224-2) and the January 8, 2010 culture report, which lists multiple antibiotics (Doc. 224-1), speak for themselves in terms of drug options available to the RMC doctors.

Defendants can testify about the reason they continued to prescribe gentamicin even though other antibiotics with less risks may have been available and given initial blood tests showed Plaintiff had some kidney problems. As Plaintiff acknowledges, "[e]ven a lay person would understand that keeping a patient on a drug with known toxicities may help to assure that [the patient] experiences [toxicity]," especially when the doctors admit to knowing the risks involved and the way to avoid those risks. See Doc. 224 at 7.

To the extent Defendants have "no explanation for why known antibiotics without gentamicin's toxicity risks were not used to treat Plaintiff," Doc. 224 at 3, expert testimony would not provide the missing link but rather would be speculative and likely would confuse the issues. A decision to use one drug over another to treat a patient is a question of medical judgment, which Eighth Amendment jurisprudence instructs is not a proper basis upon which to impose constitutional liability. See Adams v. Poag, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[T]he question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic

16

example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.").

Even more, however, both Dr. Kern and Dr. Bartels testified at deposition that the initial prescription for gentamicin was not problematic. Doc. 197-3 at 21, 70; Doc. 197-4 at 20, 22, 23. They both also suggested any opinion they may offer about the choice of drug in this case would be speculative. Dr. Bartels acknowledged, "choice of a drug to treat [Plaintiff's infection] is not [his] expertise." Doc. 197-4 at 20. And Dr. Kern stated, "I do not know what all of [the doctor's] options were" with respect to available antibiotics. Doc. 197-3 at 21.

Accordingly, the Court finds Defendants' motion is due to be granted. The Court-appointed experts should not be permitted to testify whether gentamicin was an appropriate antibiotic to treat Plaintiff's infection or whether other antibiotics would have been more appropriate given Plaintiff's medical condition and the knowns risks associated with gentamicin.

### F. Defendants' Fifth Motion <u>In</u> <u>Limine</u>

Defendants seek an order precluding Plaintiff from introducing evidence that "Defendants acted with reckless disregard to Plaintiff's health care needs" (Doc. 212). They ask that "Plaintiff be required to use the stated standard as the bar for liability in this case." Doc. 212 at 3. Plaintiff opposes the motion

(Doc. 225). The precise relief Defendants seek is unclear. To the extent Defendants are asking the Court to ensure the jury applies the correct legal standard in reaching a verdict, such a request is unnecessary. The jury will be instructed on the law. The parties submitted proposed jury instructions for the Court's consideration (Docs. 207, 214).[6] Those instructions provide, in relevant part, as follows: "You [the jurors] must follow the law as [the Court] explain[s] it"; and "anything the lawyers say is not evidence." As such, Defendants' motion is due to be denied.

Accordingly, it is now

**ORDERED:**

1.      Plaintiff's <u>Daubert</u> motion (Doc. 197) is **GRANTED in part** and **DENIED in part** as stated herein. The Court **defers** ruling on Plaintiff's motion with respect to Dr. Kern's anticipated testimony that gentamicin is a contributing factor to Plaintiff's chronic kidney disease.

2.      Defendants' first motion <u>in</u> <u>limine</u> (Doc. 202) is **DENIED**.

3.      Defendants' second motion <u>in</u> <u>limine</u> (Doc. 205) is **DENIED as moot**.

---

[6] Any concerns or disputes the parties may have about the deliberate indifference instruction can be addressed at the charge conference.

4.     Defendants' third motion in limine (Doc. 206) is **DENIED without prejudice** subject to their right to assert any appropriate objections at trial if Plaintiff tenders Dr. Beiser's deposition testimony as evidence.

5.     Defendants' fourth motion in limine (Doc. 211) is **GRANTED**.

6.     Defendants' fifth motion in limine (Doc. 212) is **DENIED**.

7.     The Court notes that admissibility questions generally should be ruled upon as they arise during trial "to allow questions of foundation, relevancy, and prejudice to be resolved in context." See Stewart v. Hooters of Am., Inc., No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at *1 (M.D. Fla. June 18, 2007). With that in mind, if, at trial, the factual predicate for disputed evidence or testimony differs from that described in the motions (and supporting records) addressed in this Order, the Court will entertain objections made contemporaneously to the proffer of any such evidence.

8.     In the parties' last joint notice to the Court advising of the status of settlement discussions (Doc. 177), counsel indicated settlement negotiations were stymied in part by the parties' "disagreement on whether and to what extent the expert testimony of the court-appointed experts (principally Dr. Bartels) will be admissible." Doc. 177 at 2. Given the Court's ruling on admissibility disputes, the Court directs the parties to **meaningfully** revisit settlement potential and to be prepared to advise the Court at the **pretrial**

19

**conference** whether a settlement conference before the assigned magistrate judge would be beneficial.

**DONE AND ORDERED** at Jacksonville, Florida, this 11th day of February 2022.

_____
BRIAN J. DAVIS
United States District Judge

Jax-6
c:
Counsel of Record

20